NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ALI TOOR and SARAH TOOR,

Plaintiffs,

v.

HOMEGOODS, INC., THE TJX
COMPANIES, INC., *et al.*,

Defendants.

Civ. No. 16-1132

**OPINION**

RECEIVED
FEB 15 2018
AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Preclude the Testimony of Anthony M. Gamboa by Defendants HomeGoods, Inc. and TJX Companies, Inc. (collectively, "Defendants"). (ECF No. 20.) Plaintiffs Ali Toor and Sarah Toor (collectively, "Plaintiffs") oppose and cross-move to Preclude the Testimony of Chad Staller. (ECF No. 22, 23.) Defendants' Motion has been decided pursuant to the papers and oral argument on February 13, 2018, and for the reasons stated below, Defendants' Motion is granted.

## BACKGROUND

This case arises out of an injury Mr. Toor allegedly sustained while shopping at Defendants' HomeGoods store in Delran, New Jersey. (Compl. ¶ 1, Ex. A, ECF No. 1-2.) Mr. Toor was struck in the head and injured when a metal display shelf collapsed. (*Id.* ¶ 5.) Mr. Toor sought medical attention in the following days. Doctors Gregory J. O'Shanick, M.D. and

1

Jeffery S. Kruetzer, Ph.D. later diagnosed Mr. Toor with traumatic brain injury and mild neurocognitive disorder. (Defs.' Mot. at 7, ECF No. 20; Pls.' Opp'n at 2, ECF No. 23; Exs. A, B, ECF Nos. 23-2, 23-3.)

On January 15, 2016, Plaintiffs filed this lawsuit in the Superior Court of New Jersey, Law Division, Mercer County, pleading two counts of negligence. (*See generally* Compl.) Defendants timely removed to this Court. (ECF No. 1.) Defendants have conceded liability, and the remaining issue for trial is what damages, if any, Plaintiffs sustained. Defendants moved to preclude the testimony of Plaintiffs' expert Anthony Gamboa. (ECF No. 20.) Plaintiffs opposed and cross-moved to preclude the testimony of Defendants' expert Chad Staller (ECF Nos. 22, 23). The Court heard oral argument on these motions on February 13, 2018. (ECF No. 26.)

## **LEGAL STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993) (establishing the rule for expert scientific testimony); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert* to all expert testimony, not only to scientific expertise). "Under *Daubert*, courts must address 'a trilogy of restrictions' before permitting the admission of expert testimony: qualification, reliability, and fit." *Mahmood v. Narciso*, 549 F. App'x 99, 102 (3d Cir. 2013) (quoting *Schneider ex rel. Schneider v. Fried*, 230 F.3d 396, 404 (3d Cir. 2003)).

"First, the expert must be qualified as an expert based on a broad range of specialized knowledge, skill or training." *Jama v. Esmor Corr. Servs., Inc.*, 2007 WL 1847385, at *2 (D.N.J. June 25, 2007) (citing *In re Paoli R.R. Yard PCB Litig.* [*In re Paoli*], 35 F.3d 717, 742 (3d Cir. 1994)). Second, "the process or technique the expert used in formulating the opinion

2

[must be] reliable." *In re Paoli*, 35 F.3d at 742. Possible considerations when determining reliability include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *In re Paoli*, 35 F.3d at 742 n.8 (noting factors *Daubert* has "deemed important to include")). This list provides "useful, though non-exclusive tools for determining the reliability of expert testimony." *Henry v. St. Croix Alumina, LLC*, 572 F. App'x 114, 118 (3d Cir. 2014).

Finally, the requirement of fit is one of relevance. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 151 (1997) (Breyer, J., concurring). "In assessing whether an expert's proposed testimony 'fits,' we are asking "whether [the] expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (quoting *Daubert*, 509 U.S. at 591) (alterations in original). The testimony offered must provide "knowledge *for purposes of the case.*" *In re Paoli*, 35 F.2d at 743 (emphasis in original). While Rule 702 embraces a "liberal standard of admissibility," *Downing*, 735 F.2d at 1230, the *Daubert* requirements help perform an important gatekeeping role, *Kuhmo Tire Co., Ltd.*, 526 U.S. at 152; *In re Paoli*, 35 F.3d at 748.

## DISCUSSION

Plaintiffs retained expert Anthony M. Gamboa, Jr., Ph.D. ("Dr. Gamboa") to perform a vocational economic assessment as to Mr. Toor's "lost capacity to perform work and earn money as a result of injury sustained on April 27, 2014." (Vocational Economic Assessment for Ali Toor at 3, Ex. A, ECF No. 20-1.) Dr. Gamboa reviewed a complete file of Mr. Toor's past

earnings, employment records and evaluations, medical records, and the medical examinations of Drs. O'Shanick and Kreutzer; a colleague of Dr. Gamboa's conducted a telephonic interview with Mr. Toor. Dr. Gamboa's report is crafted based on statistical data from the U.S. Census Bureau American Community Survey ("ACS") from 2010 to 2014. (Defs.' Mot. at 5; Ex. D, ECF No. 20-4.) Based on this data, Dr. Gamboa created tables assessing the work life probability "for a statistical cohort of similar persons" to Mr. Toor, both pre- and post-injury. (Pls.' Opp'n at 3.) Dr. Gamboa concluded that Mr. Toor will suffer a loss of $1,684,151 ($1,936,151 with a tax adjustment (*see* Ex. B, ECF No. 20-2)) from this accident due to a 12.9 year decrease in his work life expectancy, from 29.1 years to 16.2 years. (Vocational Economic Assessment for Ali Toor at 4–5.) Defendants attack Dr. Gamboa's report on the fit and reliability requirements of *Daubert*.

The Court first turns to fit: whether Dr. Gamboa's report and proffered testimony is a reasonable measure of post-injury work life expectancy, as tailored to Mr. Toor. The disability questions in the ACS are generalized, ambiguous, yes or no questions. Question 17 asks, "Because of a physical, mental, or emotional condition, does this person have serious difficulty concentrating, remembering, or making decisions?" (ACS at 9, Ex. E, ECF No. 20-5.) Subparts of question 17 and question 18 then ask whether this "physical, mental, or emotional condition" limits the individual's everyday activity. (*Id.*) These questions do not parse between types of impairments or causes of disability, and there is no objective measure for individuals answering the survey to determine what qualifies as a condition or limitation. (*See* Defs.' Mot. at 16.)

The employment questions are similarly imprecise. Question 33 asks whether someone was temporarily absent from a job, with the option "Yes, on vacation, temporary illness, maternity leave, other family/personal reasons, bad weather, etc.," or "No." (ACS at 10.) Other

4

questions ask how long the person has worked in recent time periods. (*Id.*) As Defendants note, responses to these questions do not "go to the issue of future employment," and "the answer does not give any information about the reason for why someone is not working." (Defs.' Mot. at 11.) Moreover, longitudinal data would better assist the jury in determining Mr. Toor's future work life expectancy. (*See id.* at 15 ("Dr. Gamboa makes predictions about how long Mr. Toor will work based upon . . . one year's worth of data . . . . Logically, the ACS data cannot predict future work life data, as the ACS does not follow individuals who respond to a given year's survey across additional years.").)

Dr. Gamboa's proposed testimony based on the ACS is not a reasonable measure of damages for Mr. Toor and his injury. Mr. Toor continues to work as a software engineer, has lost no time at his job, and has received a promotion. Generalized community data is insufficiently tailored to these facts as presented, and therefore, will not assist the jury in the determination of a damages award. Having found this report is not an appropriate fit for this case due to its irrelevance and lack of value to the jury, the Court need not address whether Dr. Gamboa is qualified or whether Dr. Gamboa's ACS methodology is reliable. (*See* Defs.' Mot. at 19–22; *see also* Vocational Economic Assessment for Ali Toor at 14, 16 (report discussing how it meets the evidentiary *Daubert* and *Khumo* requirements).) On balance, Dr. Gamboa's testimony should not be admissible at the trial of this case.

## CONCLUSION

For the reasons stated above, Defendant's Motion to preclude the testimony of Dr. Gamboa is granted. An accompanying Order will follow.

Date: 2/15/18

ANNE E. THOMPSON, U.S.D.J.

5